UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

                                    :

EDWIN NEUMANN                    :

                                      :        CASE NO. 1:11-CV-522

                 Plaintiff,     :

                                        :

vs.                                 :        OPINION & ORDER

                                      :        [Resolving Doc. Nos. 17, 33]

PLASTIPAK PACKAGING, INC., et al,  :

                                      :

               Defendants.    :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       In this FMLA and disability discrimination case, Defendants Plastipak Packaging, Inc, ("Plastipack") and Corinna Schmidt move under Federal Rule of Civil Procedure 56 for summary judgment. [Doc. 17.] The Defendants say that they justifiably fired Plaintiff Edwin Neumann for violating an attendance policy. They argue that Neumann failed to give them medical certification to support FMLA leave. With regard to Neumann's claim that Defendants discriminated against him on account of a disability, the Defendants say that Plastipak did not perceive Neumann as disabled and that no sufficient evidence can support his claim for disability discrimination.

       Plaintiff Neumann opposes the motion and says that he submitted a medical report to support his FMLA application within Plastipak's deadline. [Doc. 27.] The Defendant replied. [Doc. 30.] After receiving Defendants reply, the Plaintiff moved to strike two of Defendants' exhibits, [Doc. 30-1] and [Doc. 30-2], as inappropriate new evidence submitted for the first time upon reply. [Doc.

Case No. 1:11-CV-522
Gwin, J.

33.]  The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to strike.  The Court also **GRANTS IN PART** and **DENIES IN PART** summary judgment to the Defendants.

### I. Background

Plaintiff Edwin Neumann sues his former employer Plastipak and Corinna Schmidt ( Plastipak's human resources manager) after they fired him.  He says his discharge violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Ohio disability discrimination provisions, Ohio Revised Code §§ 4112.02 and 4112.99. [Doc. 1-2.] The Court must consider whether any sufficient evidence raises a material issue of fact that Plastipak fired Neumann in violation of his rights under the FMLA or Ohio law

Edwin Neumann worked for Plastipak more than twenty years, beginning employment in 1987.  In 2007, Mr. Neumann started to experience back and leg pain.  [Doc. 27-1.]  Over the next few years, Neumann's pain increased, but he continued to work his normal hours and overtime. [Doc. 18 at 41.]

After his condition worsened and in late June, 2010, Neumann began treatment with Dr. Bingaman, a surgeon at the Cleveland Clinic.  Dr. Bingaman scheduled Neumann for back surgery around July 13, 2010. [Doc. 27.]  On July 1, 2010, Neumann informed Amanda Mamick in Plastipak's human resources department that he was scheduled for back surgery and would need six to eight weeks of leave.  Ms. Mamick told Mr. Neumann that she would get the FMLA paperwork together for him to fill out. [Doc. 18 at 72.] Eventually, Mr. Neumann's leave was approved.  But in the meantime, Neumann fell down some stairs and his physician ordered him to take bed rest before undergoing surgery.  Dr. Bingaman rescheduled Neumann's surgery for August 16, 2010. [Doc. 18 at 93-94.]

Case No. 1:11-CV-522
Gwin, J.

Upon returning to work after his time off to recover from his fall on the stairs, Neumann told Corinna Schmidt that his surgery had been rescheduled.  According to Neumann, he discussed the rescheduling with Schmidt on July 18, 2010, and Schmidt told him she would get the FMLA paperwork together.  Neumann says that on July 18, 2010, Schmidt gave him FMLA paperwork including the "Certification of Health Care Provider for Employee's Serious Health Condition," and a short-term disability claims packet. Neumann says that Schmidt never gave him written notice when the FMLA paperwork needed to be submitted.  Schmidt did, however, verbally tell Neumann that his paperwork was due back within fifteen days of his surgery.[1/]  [Doc. 18 at 89-94.] Similarly, the Plastipak employee handbook states that a a physician's statement must be received by the Human Resources department within fifteen days of a leave of absence. [Doc. 17-7 at 20.]

Schmidt testifies differently.  She says she provided Neumann with all of the paperwork on August 2, 2010, including documents stating that medical certification of his leave was due by August 17, 2010.  [Doc. 20 at 48-41.]

On August 16, 2010, Neumann started what he thought was FMLA leave, and Dr. Bingaman performed back surgery him.  Attempting to comply with Plastipak's documentation requests, on August 20, 2010, Neumann's wife faxed the FMLA certification paperwork to Dr. Bingaman's office and asked his office to complete the paperwork and forward the paperwork to Plastipak.  Dr. Bingaman's office completed the medical certification but his office mis-dialed the fax number and the paperwork was not received by Plastipak.  On August 31, 2010, Plastipak fired Neumann via certified mail.  [Doc. 27 at 4-5.]  The letter said that Neumann violated Plastipak's attendance policy

---

[1/] The Plaintiff's pleadings contain some inconsistencies about the date on which Neumann and Schmidt spoke about his FMLA leave for surgery.  Regardless of the date, Neumann maintains that he was never told, verbally or via paperwork, that Plastipak required him to submit his FMLA medical certification by August 17, 2010.

Case No. 1:11-CV-522
Gwin, J.

by failing to submit FMLA medical certification, and that Neumann's employment ended on August 27, 2010.

After receiving the letter, Neumann immediately contacted Plastipak.  In response, Amanda Mammick told him that he was terminated for his failure to turn in his paperwork.  Neumann told Mammick that Dr. Bingaman's office had faxed the paperwork on August 20, 2010, but Mammick said they never received it.  Meanwhile, Neumann's wife called Dr. Bingaman's office where they discovered that the doctor's office had incorrectly dialed the fax number.  Dr. Bingaman's office re-faxed the certification on August 31, 2010.  The re-faxed notice showed that it had been originally sent on August 20, 2010, albeit to the wrong fax number

Prior to terminating him, Schmidt says, she sent a letter informing Neumann that he would be given until August 27, 2010, to submit his FMLA medical certification.  That letter, however, was not sent certified mail and Neumann denies that he ever received it.  Schmidt also says she tried to contact Neumann at the two phone numbers on file (which were disconnected) and left a message on a number she got from one of Neumann's co-workers.  [Doc. 20 at 40, 48-49.]

According to Neumann, prior to the termination letter, Plastipak never contacted him.  Although Neumann had a Plastipak email address, Schmidt did not email him about the problems with his paperwork.  Nor did the company email Neumann's wife, from whom Plastipak had received emails prior to Neumann's surgery.  Neumann's brother, Jeff, worked for Plastipak, and Scott Quimby, Neumann's direct supervisor at Plastipak, drove Neumann to work every day, but Schmidt never asked either for information on Neumann or how Plastipak might contact him.  [Doc. 27 at 6-7.]

As a discrimination case, this case raises the question what motivated Plastipak to fire

Case No. 1:11-CV-522
Gwin, J.

Neumann.  Plastipak long knew that Neumann was going to have serious back surgery–it had receive

all the paperwork for the July surgery that was delayed by his fall.  Dr. Bingaman timely tried to

provide medical certification although his office erred in sending it to the wrong number.  Plastipak

later received this notice, notice that showed that it was Dr. Bingaman's error, not Neumann's error.

Against this backdrop, the Court examines whether Plastipak's justification for firing an almost

twenty-five year employee actually motivated Neumann's firing or were sufficient to motivate his

discharge. Against this background, the answer is not even close.  Neumann offers more than

sufficient evidence to establish a material issue as to whether Plastipak's justification is pretextual.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty*

*v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material

fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477

U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit."

*Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004).  The moving party meets

its burden by "informing the district court of the basis for its motion, and identifying those portions

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set

Case No. 1:11-CV-522
Gwin, J.

forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the non-moving party rely upon mere allegations or denials of its pleadings.  Fed. R. Civ. P. 56(e).  In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party.  *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301.

### III. Analysis

#### A.  Motion to Strike

With Defendants' reply to Plaintiff's opposition to summary judgment, the Defendants filed Corinna Schmidt's affidavit [Doc. 30-1] and documents relating to Neumann's FMLA leave. [Doc. 30-2.] The Plaintiff moved to strike these filings because (1) the Defendant is submitting new

Case No. 1:11-CV-522
Gwin, J.

evidence for the first time in a reply and (2) the documents are unauthenticated. [Doc. 33.] In

response, the Defendants argue that the affidavit and documents merely respond to arguments raised

in Neumann's opposition to summary judgment.

First, with regard to Schmidt's affidavit, the Court finds that it responds to the Plaintiff's

opposition. The Plaintiff references, without proper citation, a case from this District for the

proposition that the Court should strike the "new evidence" presented by the affidavit. [Doc. 33.]

As the Plaintiff points out, however,

> Where new evidence is presented in either a party's reply brief or affidavit in further
> support of its summary judgment motion, the district court should permit the
> nonmoving party to respond to the new matters prior to disposition of the motion ...
> or else strike that new evidence. But, where the reply affidavit merely responds to
> matters placed in issue by the opposition brief and does not spring upon the opposing
> party new reasons for the entry of summary judgment, reply papers-both briefs and
> affidavits-may properly address those issues.

*Omega Cable & Comm., Inc. v. Time Warner, Inc.*, No. 05-CV-1780, 2008 WL 163613, at *1

(N.D.Ohio Jan. 16, 2008). Except for paragraph 14, the Court finds that Schmidt's affidavit

responds to Neumann's affidavit (filed with the opposition brief) and to arguments raised in his reply

brief. Schmidt's affidavit respond's to Neumann's allegations that Schmidt told him his August

FMLA leave was approved and that she gave him the FMLA paperwork. Similarly, the newly-filed

documents relate to Neumann's July, 2010, FMLA leave which he discussed in his opposition. [Doc

27 at 3-4.] Neither the affidavit nor the documents "spring upon" Neumann with new reasons for the

entry of summary judgment. Paragraph 14 of the affidavit, however, does contain a new fact not

previously before the Court. Thus, Paragraph 14 is stricken, and the Court does not consider that

evidence in its ruling on the motion for summary judgment.

Citing no caselaw, the Plaintiff also asserts that the documents submitted in reply "are not

Case No. 1:11-CV-522
Gwin, J.

properly authenticated as required by rule 56." [Doc. 33.] The Defendants subsequently authenticated

the documents with an affidavit from Gayle Lutgen, Plastipak human resources manager and records

custodian. [Doc. 35.] The issue is therefore moot, and the Court thus denies the Plaintiff's motion

to strike, with the exception of paragraph 14 of Schmidt's affidavit.

### B.  FMLA Claims

Under the FMLA, qualifying employers may not "interfere with, restrain, or deny the exercise

of or the attempt to exercise, any right provided [by the FMLA.]" 29 U.S.C.A. § 2615(a)(1).  The

Sixth Circuit recognizes two different causes of action for FMLA violations: retaliation (§

2615(a)(2)) and interference (§ 2615(a)(1) and § 2614(a)(1)).  *Bryson v. Regis Corp.*, 498 F.3d 561,

570,(6th Cir. 2007).  Plaintiff Neumann asserts causes of action under both FMLA theories.  He also

alleges disability discrimination under Ohio Revised Code § 4112.02. [Doc. 1-2.]

1.  FMLA Retaliation[2]

Section 2615(a)(2) of the FMLA says, "It shall be unlawful for any employer to discharge

or in any other manner discriminate against any individual for opposing any practice made unlawful

[by the FMLA]." 29 U.S.C. § 2615(a)(2).  In this case, Plaintiff Neumann offers indirect evidence

of unlawful FMLA retaliation, so his retaliation claims are evaluated with the three-part *McDonnell*

*Douglas* burden-shifting framework.[3]  *See, e.g.*, *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d

309, 315 (6th Cir. 2001) (applying *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) to

plaintiff's FMLA retaliation claim).  Under *McDonnell Douglas*, the plaintiff bears the initial burden

---

[2] FMLA retaliation is also referred to as FMLA discrimination.

[3] A plaintiff presents direct evidence of discrimination where he "presents proof of an existing policy which itself constitutes discrimination." *Mosley v. Pena*, 100 F.3d 1515, 1519,(10th Cir. 1996).  Mr. Neumann has not presented such direct evidence in this case.  Thus, his claim is based on indirect evidence of retaliation or discrimination.

Case No. 1:11-CV-522
Gwin, J.

of proving a prima facie case of discrimination. Then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant presents such a reason, the burden shifts back to the Plaintiff to show that the articulated reason is a pretext for discrimination. *Id*.

### a. Prima Facie Case

To establish a prima facie case for FMLA retaliation, Plaintiff Neumann must show: (1) he was engaged in an activity protected by the FMLA; (2) Defendants knew that he was exercising his rights under the FMLA; (3) after learning of the Neumann's exercise of FMLA rights, Defendants took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See* Killian v. Yorozu Automotive Tennessee, Inc. 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir.2003)).

In their motion for summary judgment, the Defendants do not argue that Neumann has failed to establish a prima facie case of FMLA retaliation. Rather, the Defendants say that they did not have the requisite retaliatory motivation. [Doc. 17.]

The FMLA provides that eligible employees are entitled to twelve weeks of leave during a twelve month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(E). The parties agree that, prior to his absence, Mr. Neumann "advised [Defendants] that he would be absent from work for surgery due to his serious health condition." [Doc. 17.] Similarly, it is undisputed that Plastipak fired Neumann on August 27, 2010— a date after Defendants learned of Neumann's plan to take FMLA leave. Finally, because Neumann was fired within weeks of his FMLA request (during the time he

Case No. 1:11-CV-522
Gwin, J.

was or thought he was on FMLA leave), "the proximity in time...constitutes indirect evidence of a causal connection between his exercise of a right under the FMLA and the adverse employment decision." *Skrjanc, 272 F.3d at 314*. *See also Chester v. Quadco Rehabilitation Center, 484 F.Supp.2d 735, 744 (N.D.Ohio,2007)* ("The cases are clear: while temporal proximity alone is not enough to establish pretext, it is sufficient to show a causal connection.") (finding a causal connection where the plaintiff was terminated less than a month after he made his FMLA request). The Plaintiff, therefore, has established all four elements of a prima facie case of FMLA retaliation.

### b.  Defendants' Legitimate, Nondiscriminatory Reason

Because Plaintiff Neumann met his burden to prove a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Neumann's termination.  The Defendants say that they fired Neumann because he was in violation of Plastipak's attendance policy when he was absent from work without submitting his FMLA paperwork. [Doc. 17 at 15.]  The Court finds that this reason is insufficient to shift the burden back to the Plaintiff.

As described above, Surgeon Bingaman had scheduled Neumann for surgery in July 2010 but the surgery was delayed only because Neumann had gotten worse.  Nothing had changed Neumann's need for surgery and Dr. Bingaman had earlier provided a report in July 2010.  Against this backdrop, Plastipak's explanation is extremely weak.

### c.  Pretext

But even if the Defendants had articulated a legitimate, nondiscriminatory reason for terminating  Neumann, the burden shifts back to the Plaintiff to show that this reason is a mere pretext for retaliation.  To meet his burden , Plaintiff Neumann "must do more than simply impugn the legitimacy of the asserted justification for [his] termination; in addition, the plaintiff 'must

-10-

Case No. 1:11-CV-522
Gwin, J.

produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'"

*Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).  The Sixth Circuit has described three ways a plaintiff can establish pretext: "first, by showing that the proffered reasons had no basis in fact; second, by showing that the proffered reasons did not actually motivate his discharge; or third, by showing that the proffered reasons were insufficient to motivate his discharge. *McConnell v. Swifty Transp. Inc.*, 198 Fed. Appx. 438, 442,, 4 (6th Cir. 2006).

In this case, the parties do not dispute Plastipak was on notice of Neumann's FMLA leave or that Plastipak received Neumann's FMLA documents on August 31, 2010.  However, the parties do dispute whether submission of the documents by August 31 was timely.  Neumann says he spoke to Schmidt on July 18 about his August surgery, and she gave him a packet of FMLA information. According to Neumann, Defendant Schmidt verbally told him he had fifteen days from the date of his surgery to return his FMLA paperwork.[4/]  Additionally, the Plastipak Associate Handbook states that employees taking medical leave must provide documentation including, "a Physician's Statement and be received by the Human Resources Department within 15 days of the [Leave of Absence] Start Date." [Doc. 27-3 at 20.] Plaintiff Neumann alleges that he never received the "Notice of Eligibility" with the August 17, 2010 and denies meeting with Schmidt on August 2, 2010.  [Doc. 27-1 at 93, 96.] In addition, Neumann says that the Schmidt did not notify him in writing or by phone that she had not received his FMLA paperwork prior to his termination.  He says that, despite the many ways Schmidt might have gotten in touch with him, she never contacted him before firing him. [Doc 27 at 16.]

---

[4/] Neumann's surgery was on August 16, 2010, so 15 days after that date would be August 31, 2010.

Case No. 1:11-CV-522
Gwin, J.

On the other hand, Schmidt says that she met with Neumann on August 2, 2010, and told him he was required to submit certification by August 17, 2010.  Defendant Schmidt also says that she gave Neumann the "Certification of Health Care Provider" with a due date of August 17, 2010. [Doc. 25-1 at 37, 39-40.] Neither Schmidt nor Neumann has any direct documentation of a meeting on July 18, or August 2.  The Defendants also argue that Schmidt left a phone message for Neumann and sent him a letter on August 20, 2010, requesting his FMLA paperwork. [Doc. 17 at 16.]  The letter states, "If the paperwork is not completed and returned by [August 27, 2010], you will be in violation of the Company's attendance policy." [Doc. 17-13.] Schmidt did not send the letter certified mail, and Neumann says he never received it.  Neumann also points out that Schmidt prepared his termination paperwork prior to the new deadline. [Doc. 27 at 16.] [Doc. 20 at 52-53.]

Construing the evidence and drawing all reasonable inferences from it in the light most favorable to the Plaintiff, the Court finds that there are genuine issues of material fact such that summary judgment is inappropriate.  Recall, the Court decides if Plastipak's proffered reason–that it fired a twenty year employee who it knew had undergone serious back surgery because the employee had not submitted a second doctor's certification–actually motivate his discharge; or whether that proffered reasons were insufficient to motivate his discharge.  The answer is obviously that a jury could easily find that such a weak justification did not motivate the firing or was insufficient to motivate firing Neumann.

First, the issue of whether Neumann timely provided Plastipak with his FMLA medical certification—and therefore whether Plastipak's termination decision was a pretext—is in dispute. Similarly, whether Plastipak made a reasonable effort to contact Neumann before firing him is at issue.  The answers to both questions could persuade the trier of fact, "that a discriminatory reason

-12-

Case No. 1:11-CV-522
Gwin, J.

more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (discussing the *McDonnell Douglas* framework in a Title VII case).  Because the determination of the due date of Neumann's certifications and thus the Defendants' reasons for terminating Mr. Neumann are material issue of fact in dispute, summary judgment on the Plaintiff's FMLA retaliation claim is inappropriate.  The Court therefore denies the Defendants' motion for summary judgment on FMLA retaliation.

2.  FMLA Interference

Plaintiff Neumann also makes a claim under the FMLA "interference" theory.  Under 29 U.S.C. 2615(1)(2), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]."  To establish a prima facie case of FMLA interference, Mr. Neumann must demonstrate, that: (1) he was an eligible employee; (2) Plastipak was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave Plastipak notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.  *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, (6th Cir. 2006).

Again, the parties do not dispute that, under the FMLA, Mr. Neumann was an eligible employee, Plastipak was an employer, Neumann was entitled to leave, or that Neumann gave Plastipak notice.  The Defendants argue, however, that because Plaintiff Neumann failed to provide his medical certification, he was not entitled to FMLA leave.  [Doc. 17 at 17.] Plaintiff Neumann argues that by providing his medical certification by August 31, 2010, he complied with Plastipak's requirements.  He asserts that he was entitled to leave and that, by terminating him, the Defendants

-13-

Case No. 1:11-CV-522
Gwin, J.

interfered with his FMLA benefits.

Consistent with the Court's prior reasoning, the question of whether Neumann submitted his FMLA medical certification on time is still at issue. The parties disagree as to the cut-off date for timely submission of FMLA documentation. Therefore, whether Neumann was entitled to FMLA benefits is a genuine issue of material fact, and the Court denies the Defendants summary judgment on the FMLA interference claims.

### C. Disability Discrimination under Ohio Revised Code Section 4112

Ohio law prohibits "any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person." Ohio Revised Code § 4112.02(A). Because Ohio courts "look to regulations and cases interpreting the federal [Americans with Disabilities] Act for guidance in [their] interpretation of Ohio law," this Court also looks to federal law for guidance. *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 207 (Ohio 1998).

In his Complaint, Neumann alleges that the Defendants terminated him from his job due to his actual or perceived disability. In their motion for summary judgment, the Defendants argue that they are entitled to summary judgment because: (1) Neumann was not disabled within the statute, and they did not regard him as disabled; (2) they had a legitimate, non-discriminatory reason for terminating Neumann; (3) Neumann cannot show that their decision to fire him was pretextual. [Doc. 17.]

As with Neumann's FMLA claims, the Court employs the *McDonnell Douglas* framework to evaluate his disability discrimination claims. Thus, Neumann bears the burden to establish a prima facie case of disability discrimination. *Ferrette v. Cuyahoga County Bd. of Elections*, 105

-14-

Case No. 1:11-CV-522
Gwin, J.

Fed.Appx. 722, 725, (6th Cir. 2004).  The Ohio Supreme Court stated that to establish a prima facie case of disability discrimination, a plaintiff must demonstrate (1) that he or she was disabled, (2) that the employer took an adverse employment action that, at least in part, came because the individual was disabled, and (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question."  *Columbus Civ. Serv. Comm.*, 697 N.E.2d at 206. Furthermore, the Americans with Disabilities Act ("ADA") defines disability as (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. 12102(1).[5/] The Complaint alleges discrimination based on definitions (1) and (3)— that Neumann actually has (or had) a physical impairment that substantially limits a major life activity or that Plastipak regarded him as disabled.[5/]

Neumann has failed to make a prima facie case for either actual or perceived disability discrimination because he does not show that he is disabled within the meaning of the ADA or Ohio law.

1.   Actual Disability

Reading in the light most favorable to the Plaintiff, the Complaint sufficiently alleges that Neumann is disable because his back injury is "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A)  To establish a prima facie case

---

[5/] Similarly, Ohio Revised Code § 4112.01(A)(13) says, "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

[5/] In their reply memorandum, the Defendants argue that the Plaintiff has impermissibly added a claim for actual disability. [Doc. 30.] The Court does not agree.  The Complaint states claims for both actual and "regarded as" disability discrimination. [Doc. 1-2 at ¶¶ 34-37.]

Case No. 1:11-CV-522
Gwin, J.

of disability discrimination, Neumann must show that his back injury is substantially limiting.

An evaluation of whether an impairment is injury is substantially limiting requires consideration of "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 581 (6th Cir.2007) (citing 29 C.F.R. § 1630.2(j)(2)). "[T]he Supreme Court and [the Sixth Circuit] have recognized that an impairment generally must be "permanent or long-term" to qualify as substantially limiting under the ADA." *Id.* at 582 (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) and *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482 (6th Cir. 2000).   In its "Interpretive Guidance to the ADA," the Equal Employment Opportunity Commission (EEOC) recognized that impairments need not last longer than six months to be considered substantially limiting.  On the other hand, "[i]mpairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe."  29 CFR Pt. 1630, App. § 1630.2(j)(2).

The Plaintiff provides little evidence on his impairment and has submitted no medical records.  In his affidavit, Neumann says that his back injury caused him severe pain and interfered with his work. [Doc 27-1 at ¶ 3.] But this is insufficient to satisfy the statutory definition.

Dr. Bingaman treated the Plaintiff for his back injury June 29 - November 9, 2010 — less than five months.  The Plaintiff's "Certification of Health Care Provider for Employee's Serious Health Condition" from Dr. Bingaman's office says that Neumann was scheduled for surgery on August 16, 2010 with a "6-8 week recovery period."  The certification also says that Neumann is not "unable to perform any of his/her job functions due to the condition," and Neumann will not "need to have treatment visits at least twice per year due to his condition." [Doc 17-6 at 16-17.] Most

-16-

Case No. 1:11-CV-522
Gwin, J.

importantly, on November 9, 2010, Dr. Bingaman reported that Neumann "may return to work without restrictions." [Doc. 17-6 at 35.] Neumann testified to working voluntary overtime shifts at Plastipak up until the day of his surgery. [Doc. 18 at 41.] Moreover, Neumann has specifically stated that he is not actually disabled.  In response to Defendants' interrogatory as to the nature of his disabling medical condition, Neumann replied "Am not disabled, but I believe that the company thought I was disabled." [Doc. 17-5 at 3.] Finally, when asked whether he was restricted from his work duties in any way, Neumann answered that he was not restricted. [Doc. 18 at 51.]

Neumann does not offer evidence that his impairment was severe enough to substantially limit him at work, particularly considering the fact that he continued to work overtime shifts until his surgery.  He also fails to offer any evidence that his life was otherwise restricted or limited by his injury.  Second, Neuman claims that he had back pain for three years prior to his surgery, but he offers no other evidence of a permanent or long-term injury.  To the contrary, the medical certification indicates that Neuman's back injury was short-lived and corrected with surgery.  Given the lack of support about the severity or duration of Neumann's back injury, the Court finds that the Plaintiff has not made out a prima facie case of disability discrimination.  Thus, the Court grants the Defendants summary judgment on Plaintiff's 'actually disabled' claim.

2.  "Regarded as" disabled

Plaintiff Neumann also makes the alternative claim that his employers regarded him as disabled and unlawfully terminated him on account of his disability.  In their motion for summary judgment, the Defendants argue that they did not regard Neumann as disabled and that because Neumann's impairment was "transitory or minor," he cannot sustain a "regarded as" disability claim. [Doc. 17.]

-17-

Case No. 1:11-CV-522
Gwin, J.

In *Sutton* the Supreme Court said that there are two ways in which a plaintiff may fall within a "regarded as" definition of disabled: (1) the defendant mistakenly believes that the plaintiff has a physical impairment that substantially limits one or more major life activities; or (2) the defendant mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)[6/] "In either case, it is necessary to show that the employer entertains misperceptions about the employee." *Daugherty v. Sajar Plastics, Inc.* 544 F.3d 696, 704 (6th Cir. 2008).  The Sixth Circuit recently said that in order to establish a "regarded as" disabled case, the plaintiff " must show that [Defendant] knew about his impairment and believed that his impairment significantly impacted a major life activity. *MacDonald v. United Parcel Service*, 430 Fed.Appx. 453, 462 (6th Cir. 2011).

Neumann has not shown that Plastipak or Schmidt believed that his back injury significantly impacted a major life activity.  Other than his bare assertions that he believes he was regarded as disabled, nothing else supports this claim.  To the contrary, Neumann testified that he received positive performance reviews, was given overtime opportunities, and received raises, and was told by his supervisors that they were anxious to have him back after his surgery. [Doc. 18 at 131, 151-153.]

Plastipak did not reassign Neumann to a different job or give him reduced hours.  At the time of his termination, Neumann was completing all duties listed as part of his job description, and was not restricted in any way from completing his work duties.  [Doc. 18 at 51.] Although Neumann testified that his supervisors knew he was having pain, he also testified that he continued to voluntarily work overtime. [Doc. 18 at 154.] The Plaintiff has not submitted any evidence that

---

[6/] *Sutton* was partially abrogated by the ADA Amendments Act of 2008 ("ADAAA").  Pub. L. No. 110-325.

-18-

Case No. 1:11-CV-522
Gwin, J.

Plastipak had designated him as disabled or changed his work duties, privileges, or schedule in any way that could indicate that he was "regarded as" disabled.  Although Neumann's superiors at Plastipak knew of his pain and that he was having surgery, nothing in the record indicates that they believed his impairment impacted a substantial life activity.

The ADA explicitly states that the 'regarded as' disability definition "shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).  As discussed above, the expected duration of Mr. Neumann's recuperation was six to eight weeks.  In fact, when Neumann first informed Plastipak of his surgery, he told them he would need only six to eight weeks off work.  [Doc. 27 at 3.]  Neumann has not offered any evidence to indicate that the actual or expected duration of his surgery recuperation was greater than sixth months, or that the Defendants so believed.  Thus, Plastipak could not have regarded Neumann as disabled within the statutory definition.

Again, Neumann has not offered any evidence that he was or could have been regarded as disabled by Plastipak or Schmidt.  Because there is no genuine issue of material fact, the Court grants the Defendants' motion for summary judgment on the Plaintiff's "regarded as" disability claim.

3.  Failure to Accommodate

In his memorandum in opposition to the motion for summary judgment, the Plaintiff raises— for the first time— a claim that Plastipak failed to accommodate his disability.  According to the Plaintiff, when Plastipak terminated Neumann while he was out on FMLA leave, they denied his request for accommodation in violation of Ohio Revised Code § 4112.  [Doc. 27 at 19.] First,

-19-

Case No. 1:11-CV-522
Gwin, J.

because the Court granted the Defendants' motion for summary judgment on Plaintiff's disability

claims, the Plaintiff has no basis for asserting that Plastipak failed to accommodate him.  Moreover,

as the Defendants point out, the Plaintiff is barred from making this claim because he did not raise

a failure to accommodate claim in his original complaint. [Doc. 30.]  "A plaintiff may not amend his

complaint through arguments in his brief in opposition to a motion for summary judgment.

*Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). *See also Guiffre v. Local Lodge No.*

*1124, United Steelworkers of America, 940 F.2d 660 (6th Cir. 1991)* ("A party may not rely on

wholly new allegations of wrongdoing to resist a motion for summary judgment."). Until filing his

response to the motion for summary judgment, the Plaintiff had not made any claim that the

Defendants failed to accommodate his disability.  At this late stage, then, the Plaintiff is barred from

asserting a new claim of failure to accommodate.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

Defendants' motion for summary judgment.  The Court **GRANTS** the motion with regard to Count

Two of the complaint (violation of Ohio Revised Code § 4112) and **DENIES** the motion in all other

respects.  The Court also **GRANTS** the Plaintiff's motion to strike paragraph 14 of Corinna

Schmidt's affidavit, but **DENIES** the remainder of Plaintiff's motion to strike.

IT IS SO ORDERED.


Dated: October 31, 2011                          s/      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE